CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
For Roanoke
MAR 12 2009
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL J. HERDT, | ) | Civil Action No. 7:08-cv-00532 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| STANLEY K. YOUNG, et al., | ) | By: Hon. Jackson L. Kiser |
| Respondents. | ) | Senior United States District Judge |

Michael J. Herdt, a Virginia prisoner proceeding pro se, petitioned me, pursuant to 28 U.S.C. § 2241, to issue a writ of habeas corpus. Herdt requests that I reconsider my prior order dismissing his habeas petition, and he has now provided a copy of the contract at issue. Herdt claims that he is unlawfully imprisoned by a state that did not enter his conviction order or become a party to the Interstate Corrections Compact. After considering Herdt's motion, the contract, the previous memorandum opinion, and final order, I do not vacate my order dismissing his petition.

I.

By Herdt's admission, the Sixth Judicial District Court of Campbell County, Wyoming, convicted Herdt of sexual assault in the first degree and sentenced him to serve thirty-five to fifty years incarceration. The United States Court of Appeals for the Tenth Circuit affirmed the federal district court's denial of his 28 U.S.C. § 2254 habeas petition as untimely. Herdt v. Uphoff, 15 Fed. Appx. 691 (10th Cir. 2001), cert. denied, 536 U.S. 944 (2002). In the spring of 2008, the Wyoming Department of Corrections ("WDOC") transferred Herdt to the Pocahontas State Correctional Center in Pocahontas, Virginia.

Herdt filed his § 2241 habeas petition naming numerous defendants to challenge his transfer from Wyoming to Virginia. (Pet. 1.) Herdt acknowledged that his transfer was made

pursuant to a contract between the Virginia Department of Corrections ("VDOC") and the WDOC. (Pet. 3; Contract (Mot. New Trial Ex. A) 4.) Herdt alleged that Wyoming is not a party to the Interstate Corrections Compact ("ICC"), a multilateral agreement among states to facilitate transfers of state inmates from one state's correctional facilities to another, and Virginia is a party to the ICC. (Pet. 3.) Herdt alleged that the terms of the ICC allow only member states to enter into agreements with other member states and the contract violates the Compact Clause, the Commerce Clause, and the Privileges and Immunities Clause of the United States Constitution. (Pet. 3-6.) Herdt claimed that he should be immediately released from custody because his incarceration in Virginia is pursuant to an unlawful contract between the VDOC and the WDOC.

I dismissed Herdt's § 2241 habeas petition by an order entered on December 18, 2008. Herdt subsequently filed a motion for a new trial or relief of judgment, pursuant to Federal Rule of Civil Procedure 59(a)(2), which I construe as a motion for relief from a judgment or order, pursuant to Federal Rule of Civil Procedure 60(b).[1] Herdt argues that "Virginia Code § 53.1-216 is the Interstate Corrections Compact[] and is the authority invoked by the VDOC to enter into the contract." (Mot. New Tr. (docket #6) 1.) Herdt alleges that Virginia can only contract with other ICC party states to arrange for the interstate transfer of prisoners.[2]

II.

The WDOC and the VDOC, by virtue of their respective state laws, may enter into

---

[1] Rule 60 is the appropriate procedural rule to challenge a final order dismissing an action before a trial has occurred. Compare Fed. R. Civ. Pro. 59 with Fed. R. Civ. Pro. 60.

[2] Herdt also states that I did not have subject matter jurisdiction to review his petition without first examining the contract, which he now attaches to his motion. However, I had subject matter jurisdiction to adjudicate the case pursuant to 28 U.S.C. § 2241(c)(3) because Herdt was in custody, allegedly in violation of his constitutional rights.

2

interstate corrections agreements to accommodate interstate prisoner transfers. See Wyo. Stat. Ann. § 25-1-105(e) ("The [WDOC] may enter into contracts and agreements with other states, including those which are not party to the Western Interstate Corrections Compact, . . . for the confinement and maintenance of" Wyoming prisoners.); Va. Code § 53.1-216 (authorizing governor to execute a compact similar to statute's boilerplate with any state for interstate transfer of prisoners). Therefore, the VDOC and the WDOC each have the authority to contract with any other state for the interstate transfers of prisoners, regardless of whether each state is a party to the ICC. Moreover, the contract does not give Herdt any liberty interest in his transfer from Wyoming to Virginia.

Interstate transfers are constitutional, and inmates do not have a protected liberty interest against interstate transfers. See Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996) (stating no liberty interest, a necessary element of a procedural due process claim, implicated in interstate transfer, and interstate transfer does not impose atypical and significant hardship on the inmate) (citing Meachum v. Fano, 427 U.S. 215, 223-24 (1976), and Sandin v. Conner, 515 U.S. 472, 484 (1995)); Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000) (affirming denial of § 2241 petition because Wyoming law not violated by interstate exchange of inmate from Wyoming to Texas, and federal law does not prohibit inmate's transfer from one state to private facility in another); Poulos v. McKinna, 210 F.3d 390 (10th Cir. 2000) (affirming denial of § 2241 petition because Wyoming law not violated by interstate exchange of inmate from Wyoming to Colorado, and neither the Due Process Clause nor the Supremacy Clause of the Constitution were implicated by the interstate transfer). Accordingly, state laws authorized the VDOC and the WDOC to contract for Herdt's interstate transfer, and Herdt's transfer did not violate his

3

constitutional rights.

Herdt also complained that Wyoming inmates do not have to pay medical co-pays, but he has to pay medical co-pays because he housed at a Virginia correctional facility. I advised Herdt that the claim, which is not actionable in a § 2241 petition, would nevertheless fail because "the class to which an inmate belongs consists of the persons confined as he [is] confined, subject to the same conditions to which he [is] subject."[3] Moss v. Clark, 886 F.2d 686, 691 (4th Cir. 1989). Therefore, Herdt did not establish a constitutional violation where he pays the same co-pays as his fellow Virginia inmates housed at the same facility.

Herdt also alleged that the contract between the VDOC and the WDOC violates the Compact Clause because Congress did not approve the contract. See U.S. Const. art. I, § 10, cl. 3. The Compact Clause does not require congressional approval of every agreement between or among states, but only those agreements that increase states' political powers at the expense of the federal government. Virginia v. Tennessee, 148 U.S. 503, 519 (1893). The agreement between the VDOC and the WDOC does not implicate any federal interests, and, thus, congressional approval is not required.[4] Therefore, the contract between the VDOC and the WDOC does not violate the Compact Clause.

Herdt claimed that the contract between the WDOC and the VDOC also violates the

---

[3] Although the previous memorandum opinion discussed 28 U.S.C. § 1915A and Bell Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955 (2007), Herdt must file a separate action pursuant to 42 U.S.C. § 1983 to challenge the conditions of his confinement that would not accelerate his release from custody. See Preiser v. Rodriguez, 411 U.S. 475, 486-91 (1973) (stating habeas action is the means to quicker release from custody while § 1983 suit challenges the conditions of confinement where quicker release not at issue). I screen habeas petitions arising from state custody pursuant to Rule 4 of the Rules Governing § 2254 Cases. See Rule 1(b) of the Rules Governing § 2254 Cases (stating scope of the Rules may apply to a § 2241 habeas corpus petition).

[4] Even if federal interests were implicated, Congress gave its consent for "States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts." 4 U.S.C. § 112.

4

Commerce Clause because it "creates a situation where the taxpayers of . . . Wyoming are directly funding the VDOC. . . . [The funding is] at a substantial profit over the costs of what the actual costs [are] to . . . Virginia to house their own prisoners." (Pet. 6); see U.S. Const. art. I, § 8, cl. 3. Herdt also claimed that the contract violates the Commerce Clause because it allows Virginia correctional centers to compete with private businesses. The previous opinion found that Herdt lacked standing to challenge the contract under the Commerce Clause because the payment of taxes, even if Herdt pays any Wyoming taxes with an inmate's salary, was not enough to establish standing. See Hein v. Freedom from Religion Found., Inc., 127 S. Ct. 2553, 2559 (2007); Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 41 (1976). Herdt argues that he has standing to challenge the contract under the Commerce Clause as a habeas petitioner being held pursuant to a contract that violates the Commerce Clause. However, Herdt's argument fails on the merits. The contract between the VDOC and the WDOC does not regulate, discriminate, or onerously burden interstate commerce. See American Trucking Ass'n, Inc. v. Michigan Pub. Serv. Com'n, 545 U.S. 429, 433 (2005). If Virginia is acting as a market participant rather than as a market regulator, the dormant Commerce Clause does not limit Virginia's activities. See South-Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 93 (1984) ("The market-participant doctrine permits a State to influence a discrete, identifiable class of economic activity in which it is a major participant."). Therefore, the contract also does not violate the Commerce Clause.

Herdt claimed that the "Full Faith and Credit Clause and the Privileges and Immunities Clause(s) of Art. IV and the Fourteenth Amendment do[] not authorize Virginia to execute the
5

criminal laws of the State of Wyoming or to enforce criminal judgments of a sister state."[5] (Pet. Mem. 5-6.) However, Herdt questions whether the VDOC must independently review his Wyoming conviction to test its validity against Virginia laws. The Full Faith and Credit Clause does not require a state to enforce a penal judgment from another state. Huntington v. Attrill, 146 U.S. 657 (1892). While Virginia is not required to enforce another state's penal laws, it may elect to recognize the finality of a foreign criminal conviction. I look to the contract's terms because I still find that the contract lawfully authorizes Herdt's imprisonment. The VDOC agreed therein to "faithfully execute the sentences and orders of the committing courts" for Wyoming convicts sent to Virginia prisons. (Contract 4.) Therefore, neither the Full Faith and Credit Clause nor the contract require the VDOC to review Herdt's Wyoming criminal judgment.

I previously dismissed Herdt's habeas petition for failing to state a constitutional claim that warranted his release from custody. After examining the first memorandum opinion and order, the petition, and the motion for a new trial, I find that Herdt still does not establish a constitutional claim and his petition remains dismissed for the reasons discussed in this memorandum opinion.

III.

---

[5] Herdt argued in his petition that Wyoming mixed elements from two separate statutes and relied on his presentence report to illegally convict him. I construed this argument in the prior opinion as seeking a writ of habeas corpus under 28 U.S.C. § 2254. See Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000) (stating § 2254 petitions challenge the validity of a state court conviction and sentence whereas § 2241 petitions generally challenge the execution or implementation of a sentence); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (stating courts should liberally construe pro se complaints). I accordingly denied his request to examine his state court conviction via a § 2241 petition. Herdt states in his instant motion that I read too much into his discussion of his underlying Wyoming conviction and he was questioning his conviction under the Thirteenth Amendment. The Thirteenth Amendment states, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. To the extent Herdt alleges a violation of his Thirteenth Amendment rights, the Thirteenth Amendment is inapplicable to Herdt because he is incarcerated as punishment for the crime for which he was convicted.

For the foregoing reasons, I deny Herdt's motion for a new trial.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the petitioner.

**ENTER**: This 12th day of March, 2009.

*/s/ Jackson L. Kiser*
Senior United States District Judge